Dear Mr. McBride:
Your request for an opinion has been forwarded to me for research and reply. You have requested that our office provide clarification of the statutory provisions and ethical standards governing social workers' mandatory reporting requirements under the Louisiana Social Work Practice Act, the Louisiana's Children's Code, and the National Association of Social Workers Code of Ethics. Attached to your request you have provided an article entitled, "Legal and Ethical Issues in Social Worker-Lawyer Collaborations." Based upon this article, it appears that your concerns are limited to the impact or effect of social workers' mandatory reporting requirements in collaborative endeavors with lawyers (e.g., interdisciplinary representation of a client in a legal setting).
A. Overview of Social Workers' Mandatory Reporting Obligations
The Louisiana Social Work Practice Act ("LSWPA") is codified in Chapter 35 of Title 37 of the Louisiana Revised Statutes (La.R.S. 37:2701 etseq.). According to the LSWPA, the Louisiana Code of Evidence governs communications between social workers and their clients. In general, most communications between a client and a social worker in her official capacity are privileged. However, there are exceptions to this general rule, two of which are pertinent to your request.
The first exception applies when a social worker's client is "a minor under the age of eighteen and the information acquired by the social worker indicate[s] that the child was the victim or subject of a crime, then the social worker may be required *Page 2 
to testify fully in relation thereto upon any examination, trial, or other proceeding in which the commission of such crime is a subject of inquiry."[1] In other words, if a social worker's client is the victim or subject of a crime, which would include child abuse or neglect, the communications may no longer be privileged.
Another exception applies if a communication between a social worker and her client "reveals the intended commission of a crime or harmful act and such disclosure is determined to be necessary by the social worker to protect any individual or person from a clear, imminent risk of serious mental or physical harm or injury, or to forestall a serious threat to the public safety;" in such situations, the communication is no longer required to be confidential or privileged.[2] In fact, the law shields licensed social workers from being sued for breach of confidentiality "[w]hen a patient has communicated a threat of physical violence, which is deemed to be significant in the clinical judgment of the . . . social worker, against a clearly identified victim or victims, coupled with the apparent intent and ability to carry out such threat," and the social worker, exercising reasonable judgment, warns others about the potential threat or takes precautions to prevent her client from harming another.[3]
The Louisiana Code of Evidence provides specific exceptions to any privilege that may be claimed by the patient/client relating to official communications with her social worker that complement a social worker's mandatory reporting requirements. Article 510 of the Louisiana Code of Evidence defines a social worker who is licensed under the laws of any state of the United States as a "psychotherapist" and more broadly as a "health care provider."[4] In general, a patient in a civil or criminal proceeding may prevent her health care provider [social worker] from disclosing any confidential communications between them "made for the purpose of advice, diagnosis or treatment."[5] However, in civil and criminal cases where "the communication [between the patient and her social worker] is relevant to proceedings concerning issues of child abuse, elder abuse, or the abuse of disabled or incompetent persons," the communication is no longer considered privileged and may be disclosed.[6]
This evidentiary exception is completely aligned with the LSWPA's mandatory reporting requirements. *Page 3 
The Louisiana Children's Code also governs social workers' mandatory reporting requirements. Article 609 of the Louisiana Children's Code provides that any mandatory reporter, which includes social workers, "who has cause to believe that a child's physical or mental health or welfare is endangered as a result of abuse or neglect or that abuse or neglect was a contributing factor in a child's death shall report in accordance with Article 610."[7] Article 610 simply outlines the reporting procedure in instances of child abuse, neglect, or when such factors contribute to a child's death.[8] If a mandatory reporter fails to report, she will be subject to criminal prosecution.[9] Clearly, social workers have an obligation to report all instances of child abuse or neglect, and failure to do so may result in criminal repercussions.
While the Louisiana Legislature has enacted laws regarding social workers' mandatory reporting requirements, the social work profession has implemented similar requirements on a national level within its Code of Ethics. The National Association of Social Workers [NASW] Code of Ethics states that a social worker's "primary responsibility is to promote the wellbeing of clients."[10] The NASW Code of Ethics also addresses a social worker's responsibility to respect her client's right to privacy, while noting some exceptions. Specifically, "[s]ocial workers should protect the confidentiality of all information obtained in the course of professional service, except for compelling professional reasons. The general expectation that social workers will keep information confidential does not apply when disclosure is necessary to prevent serious, foreseeable, and imminent harm to a client or other identifiable person."[11] Yet such disclosure should be limited to the "least amount of confidential information necessary to achieve the desired purpose."[12] Under the NASW Code of Ethics, social workers also have the responsibility of advising their clients to the extent possible before any such *Page 4 
disclosure is made.[13] In fact, the NASW Code of Ethics advises that social workers "discuss with clients and other interested parties the nature of confidentiality and limitations of clients' right to confidentiality."[14] Social workers should advise their clients as to any confidential information that may be sought or legally mandated to be disclosed.[15] Ideally, social workers should have this discussion with their clients as soon as the social worker-client relationship has been established, and revisited as necessary through the remainder of the relationship.[16]
The NASW Code of Ethics also offers guidance on interdisciplinary collaborations involving social workers; this particular issue has not been addressed by the Louisiana Legislature. The NASW Code provides the following guidance related to interdisciplinary collaboration:
 (a) Social workers who are members of an interdisciplinary team should participate in and contribute to decisions that affect the well-being of clients by drawing on the perspectives, values, and experiences of the social work profession. Professional and ethical obligations of the interdisciplinary team as a whole and of its individual members should be clearly established.
 (b) Social workers for whom a team decision raises ethical concerns should attempt to resolve the disagreement through appropriate channels. If the disagreement cannot be resolved, social workers should pursue other avenues to address their concerns consistent with client well-being.
Code of Ethics, National Association of Social Workers, § 2.03.
The NASW Code of Ethics guidelines indicate that whenever social workers collaborate as members of interdisciplinary teams (e.g., legal teams), they need to advise other team members of their professional and ethical obligations. When social workers clearly disclose their professional and ethical obligations, such as mandatory reporting, appropriate accommodations or alternative measures may be implemented that enable social workers to participate in interdisciplinary collaborations. *Page 5 
Overall, social workers have a mandatory reporting requirement which allows them to disclose confidential communications with their clients under certain circumstances without legal repercussions. Rules governing the legal profession allow for similar disclosures, albeit under more limited circumstances.
B. Confidentiality of Attorney-Client Communications Governed by theLouisiana Rules of Professional Conduct
Rule 1.6 of the Louisiana Rules of Professional Conduct governs confidential communications between lawyers and their clients. In general, all attorney-client communications shall be confidential unless the client gives informed consent to share the communication, "the disclosure of the communication is impliedly authorized in order to carry out the representation," or an exceptional circumstance as defined by the Code authorizes disclosure. Rule 1.6(b) of the Louisiana Rules of Professional Conduct allows a lawyer to "reveal information relating to the representation of a client to the extent the lawyer reasonably believes necessary: (1) to prevent reasonably certain death or bodily harm; . . . (6) to comply with other law or a court order."
Unlike the LSWPA, there is no express obligation directing lawyers to report incidents of child abuse or neglect. Therefore, without permission from one's client an attorney may not disclose communications made pertaining to such instances. Such disclosure is reserved for those fact-specific instances where a lawyer reasonably believes it is necessary "to prevent reasonably certain death or bodily harm." Otherwise, there is no general duty or obligation for an attorney to report such communications and to do so would result in a breach of the attorney-client relationship.
Based on the foregoing analysis, there is an apparent divergence between attorneys and social workers when it comes to mandatory reporting. This difference may be significant when it comes to interdisciplinary collaborations involving attorneys and social workers as per the Louisiana Rules of Professional Conduct. Specifically, Rule 5.3 states in pertinent part as follows:
 With respect to a nonlawyer employed or retained by or associated with a lawyer:
 (a) a partner, and a lawyer who individually or together with other lawyers possesses comparable managerial authority in a law firm shall make reasonable efforts to ensure that the firm has in effect measures giving reasonable assurance that the person's conduct is compatible with the professional obligations of the lawyer; *Page 6 
 (b) a lawyer having direct supervisory authority over the nonlawyer shall make reasonable efforts to ensure that the person's conduct is compatible with the professional obligations of the lawyer;
 * * * *
Louisiana Rules of Professional Conduct (West 2010) (emphasis added).
Pursuant to the foregoing rule, if a lawyer retains the services of a social worker, then the lawyer must make reasonable efforts to ensure that the social worker's conduct is compatible with the professional obligations of the lawyer. This inevitably leads to the crux of your inquiry: whether legal professional obligations are compatible with those of social workers.
Licensed social workers under Louisiana law are mandated to report situations in which they suspect child abuse and neglect. Social workers must legally adhere to their mandatory reporting obligation. And yet, there is no similar mandate for attorneys under the Louisiana Rules of Professional Conduct. Therefore, if an attorney were to report such information without her client's consent, then she would be violating Rule 1.6 of the Louisiana Rules of Professional Conduct for breaching a confidential attorney-client communication. Clearly, this presents a potential problem for attorneys collaborating with social workers.
Therefore, it is essential that social workers involved in interdisciplinary collaborations with other professionals (e.g., lawyers) initially express their professional and ethical obligations, particularly their mandatory reporting obligation. Depending upon the collaboration, arrangements may be made to accommodate the social worker's needs. The article attached to your opinion request entitled, "Legal and Ethical Issues in Social Worker-Lawyer Collaborations," presents several models that may be utilized in such collaborations. See
article attached.
C. Conclusion
In sum, the Louisiana Social Work Practice Act mandates social workers to report instances in which a minor is the victim of a crime, such as child abuse or neglect. The Louisiana Children's Code contains a mandate directing social workers to report instances of child abuse or neglect. Failure to act accordingly may result in criminal prosecution. The Louisiana Code of Evidence complements the mandatory reporting requirement by allowing the admission of otherwise confidential statements exchanged during the social worker-client relationship relating to child abuse and neglect in civil and criminal litigation. The National Association of Social Workers Code of Ethics directs social workers to *Page 7 
protect their client's interests, which includes keeping all social worker-client discussions confidential. However, Louisiana law and the National Association of Social Workers Code of Ethics allows for social workers to breach the confidentiality of the social worker-client relationship in order to protect one's client or another (e.g., child who is being abused or neglected) from imminent harm or danger. Therefore, social workers should disclose their professional ethical obligations, including mandatory reporting, before engaging in interdisciplinary collaborations (e.g., assisting attorneys in the representation of a client) to prevent violating their ethical obligations.
We hope that this information sufficiently answers your inquiry. If we can be of further assistance, please do not hesitate to contact us.
 Very truly yours,
 JAMES D. "BUDDY" CALDWELL ATTORNEY GENERAL
 BY: __________________________ KATHERINE K. GREEN Assistant Attorney General
 JDC:KKG:jv *Page 8 
 Legal and Ethical Issues in Social Worker-Lawyer Collaborations
Introduction
Social workers are increasingly recognized as beneficial members of interdisciplinary professional teams in addressing the complex needs of clients who seek legal services. Law school clinics are leading the way by introducing collaborative initiatives for law and social work students. Social workers' functions in law settings vary and include forensic interviewing, trial preparation and consultation, coordination of resources, therapeutic counseling, case management, mediation and expert witness consultation. The nature of the social worker's relationship to the legal team may be as a consultant, employee or direct service provider. A common legal and ethical issue that arises for social workers who are part of a legal team is whether they are mandated to report child abuse or whether the attorney-client privilege limits the fulfillment of this obligation. This Legal Issue of the Month article reviews the available legal research and information addressing this concern.
Law Clinic Collaborative Models
An increasing number of professional schools have introduced lawyer-social worker collaborations. Licensed social workers also work with lawyers in private law firms and public entities such as prosecutors' and public defenders' offices. A program operated by Michigan State University was designated as a Law Social Work Clinic and focused on child welfare cases and direct representation of children in the public system (Stead, Kozakiewicz and Pope, 2007). It required law and social work students to take a child welfare seminar course together and work in teams as equals, sharing tasks jointly. In Vermont, a collaborative program was part of Vermont Law School's legal clinic with participation by Casey Family Services, as well as the University of Vermont's social work school (Zavez, 2005). In Colorado, an interdisciplinary collaborative program was part of a domestic violence legal clinic operated by the University of Denver and a research component was supported by a federal grant from the Department of Justice (St. Joan, 2001). These represent just a few of the available examples. Multidisciplinary student clinics provide a crucial opportunity for members of the law and social work professions to learn from each other and develop the skills necessary to support collaboration throughout their respective professional careers.
Confidentiality and Mandatory Reporting Obligations
Lawyers are required to maintain the confidentiality of client communications and are not generally obligated to report child or elder abuse. A few states mandate specifically that lawyers report child abuse, while nine mandate the disclosure of confidential information in order to prevent death or substantial bodily harm (Anderson, Barenberg and Tremblay, 2007, *695 — *697). A handful of other states include attorneys as mandated reporters only when the information is learned outside of their professional scope (Dixon and Dixon, 2006, p. 7). According to the American Bar Association's Model Rules of ProfessionalConduct, Rule 5.3 (2000), lawyers that employ or retain nonlawyer assistants are required to "make reasonable efforts to ensure that the person's conduct is compatible with the professional obligations of the lawyer."
Social workers are obligated to maintain confidentiality according to state licensing laws *Page 9 
and the NASW Code of Ethics (NASW, 1999) which permit disclosures for mandated reporting obligations. Social workers in all fifty states, the District of Columbia and the U.S. territories are mandated to report instances of child abuse and neglect and in most jurisdictions, instances of elder abuse. For details concerning state child abuse reporting obligations, see the NASW General Counsel Law Note, Social Workers Child Abuse Reporting (Polowy and McLeod, 2000).
Models of Interdisciplinary Representation
Several models of representation are available to describe the interdisciplinary relationships between lawyers and social workers (Anderson, Barenberg and Tremblay, 2007; St. Joan, 2001; Zavez, 2005). An understanding of these scenarios is important to analyzing the respective obligations of the lawyers and social workers involved.
The "consultant" model: In this situation the social worker is used as a consultant to the lawyer for trial preparation purposes, but does not provide social work services directly to the client.
The "direct service provider" model: In some instances, the social worker's services are obtained as part of a referral relationship (as mentioned in the Maryland Attorney General Opinion) where the social worker's practice is completely independent of the lawyer's or in a multi-function agency that has both a law clinic and a mental health clinic.
The "employee" model: In this type of practice the social worker is an employee of the lawyer or law firm and an argument may be made that the social worker is subject to the same confidentiality requirements as other nonlawyer employees. This does not resolve the social worker's potential ethical and legal conflicts, which may need to be addressed by one of the models below.
The "consent" model: Under this organizational model lawyers request that clients consent to the disclosure of child abuse and neglect information with social workers. An argument against this model is that an attorney has an obligation to vigorously represent the client, and it would compromise the client's legal status to coach the client to consent to disclose damaging information to a mandatory reporter such as a social worker.
The "confidentiality wall" model: This model was used by at least two law clinics and requires an initial screening by the lawyer to rule out child abuse issues before involving the social worker as a team member. Reportable child abuse or neglect information that the social worker obtains directly may still need to be reported; however, the probability of a need to report is reduced by the initial screening.
The "notice" model: This describes the approach offered by the Kansas and District of Columbia opinions, above, where clients are given notice of social workers' reporting obligations before social work services are offered as an option.
Attorney General and Ethics Opinions
Two states (Maryland, 1990; Kansas, 2001) have addressed the potential attorney — social worker legal and ethical conflicts dilemma by issuing formal Attorney General opinions. Attorney General opinions are written under the direction of the Attorney General of the State to give the opinion of that office on a matter of state law which has not been interpreted by the courts. While they are advisory in nature, providing an analysis and interpretation on the matter presented, Attorney General opinions may be very persuasive to the courts. The District of Columbia Bar Association and the State Bar of Nevada have also reviewed the mandated reporting issue from the perspective of the lawyer's ethical obligation in formal ethics opinions (DC Bar Ethics Opinion, 1998; State Bar of Nevada, 2005).
Maryland was the first state to address the potential conflict between attorney — client privilege and mental health practitioners' child abuse reporting obligations. In 1990, that *Page 10 
state's Attorney General issued an opinion directed to a county prosecutor (Md. Op. Atty. Gen., 1990). The prosecutor's inquiry framed the question as to the confidentiality of information disclosed to a mental health practitioner in instances when the client was referred by an attorney. In those situations, the mental health professional was not directly under the employ of a lawyer.
The Maryland Attorney General Opinion distinguished between child abuse information that is identified by the social worker prior to the initiation of criminal charges against the client and that which is learned as part of a client's defense after indictment. If a mental health practitioner is assisting in the legal defense of a client who is already subject to a criminal proceeding and who discloses child abuse or neglect information, then the mental health practitioner may be excused from reporting the abuse. If a lawyer refers a client who is not under indictment, the social worker may be obligated to report any child abuse or neglect that is subsequently disclosed. Thus, in Maryland the distinguishing factor is not whether or not an attorney referred a client, but rather the legal status of the client at the time of the referral for mental health services.
In response to an inquiry from an association of social workers, an ethics opinion from the DC Bar Association was adopted on June 17, 1998 (DC Bar Ethics Opinion). This opinion acknowledges that a dilemma is created for lawyers and social workers when a social worker who is employed by a lawyer becomes aware of child abuse or neglect implicating their client. The recommendation provided is carefully worded; however, it does not prohibit lawyers from employing social workers. The lawyer is guided to inform the social worker of the lawyer's confidentiality obligations and responsibility to assure that the social worker preserves confidences. The lawyer should not provide legal advice to the social worker as to the social worker's obligation, nor should the lawyer require the social worker to ignore the social worker's reporting obligations. Lawyers employing a social worker are directed to inform clients of the possible implications of sharing child abuse or neglect information with a social worker employed by the lawyer so that the clients may voluntarily choose whether or not to utilize the social workers' services under those conditions.
In Kansas the question of conflicting confidentiality obligations between attorneys and social workers was posed by that state's Behavioral Sciences Regulatory Board in the context of a social worker directly employed by a lawyer (Kan. Atty. Gen. Op. No. 01-28, 2001). The Kansas Attorney General's Opinion adopted the reasoning and the directives of the DC Bar ethics opinion without substantial variation.
Nevada addressed the child abuse reporting obligation from the unique perspective that both lawyers and social workers are mandated reporters under that state's laws. The Bar Committee that developed an advisory opinion on this issue concluded that there is an unresolved conflict between the lawyer's confidentiality obligation and the reporting statute. The way the law reads, the lawyer will be subject to risk of professional discipline if information is disclosed without consent or criminal prosecution for failure to report if it is not reported. Finally, the ethics committee opined that social workers in the employ of lawyers should be treated as legal assistants subject to the same standards as lawyers (State Bar of Nevada, 2005). A weakness of the Nevada ethics committee's opinion is that it does not purport to advise social workers and focuses primarily on the responsibilities of lawyer who employ social workers.
Analysis and Conclusions
Interprofessional collaborations between social workers and lawyers are expected to increase as the value of social work skills is recognized as an enhancement to client services. Observers who have addressed the concept of social worker — lawyer collaboration all agree that the positive impact on client representation clearly outweighs the potential challenges raised by such arrangements.
As social workers enter into formal relationships with lawyers they should anticipate the need to address potential conflicts in child abuse reporting in a proactive manner, prior to the existence of a problematic situation. Social workers should be familiar with any ethics or legal opinions in their state that address these issues and discuss with potential lawyer employers the most workable model of representation to serve clients' *Page 11 
needs and preserve the professional obligations of both social workers and lawyers. Interdisciplinary law clinics within a state may also provide a useful resource for analyzing the conflicting confidentiality and reporting obligations of social workers who routinely collaborate with lawyers. A clear understanding of the social workers' role as legal team consultant, employee or direct service provider to the client is key to analyzing the potential legal and ethical conflicts between the lawyers' and social workers' respective professional obligations regarding the mandated reporting of abuse.
References
American Bar Association, (ABA) (2000) Model rules of professionalconduct (MRPC, Rule 5.3). [Online]. Available athttp://www.abanet.org/cpr/e2k/e2k-rule53.html (last visited December 12, 2007.
Anderson, A., Barenberg, L, and Tremblay, P. (2007). Professionalethics in interdisciplinary collaboratives: Zeal, paternalism andmandated reporting. 13 Clinical L. Rev. 659 [Online]. Available at http://lsr.nellco.org/cqi/viewcontent.cqi? article=1146context=bc/bclsfp (last visited December 18, 2007).
District of Columbia Bar Association Ethics Opinion No. 282 (1998).
Dixon, J.W. and Dixon, K.E. (2006). Attorney-client privilege versusmandatory reporting by psychologists: Dilemma, conflict, and solution. 69 J. of Forensic Psychology Practice 69-78. Available at http://www.psycholoqyandlaw.com/Dixon% 20 %20Dixon%202005%20 %20Attv-Client%20Phvileae%20 %20Mandatory%20Reportinq.pdf (last visited December 5, 2007).
Kansas Attorney General Opinion No. 01-28 (2001). 2001 WL 930603.
75 Maryland Attorney General Opinion 76 (1990). 1990 WL 595302.
Polowy, C. and McLeod, P. (2000). Social workers child abusereporting, A review of state mandatory reporting requirements. National Association of Social Workers. Washington, DC: NASW General Counsel Law Note Series (may be ordered by calling (800) 638-8799, Ext. 290).
National Association of Social Workers. (1999). NASW code of ethics.
Washington, DC: Author. [Online]. Available at http://www.socialworkers.org/pubs/code/default.asp (last visited December 12, 2007).
State Bar of Nevada Standing Committee on Ethics and Professional Responsibility (2005). Formal opinion no. 30. [Online], Available at http://www.nvbar.org/Ethics/Opinion%2030%20%20Social%20Work.pdf (last visited December 19, 2007).
Stead, K., Kozakiewicz, J., and Pope, D. (2007). Interdisciplinary lawand social work model for child welfare education and practice. Presented at 2007 Annual Program Meeting, Council on Social Work Education, San Francisco, CA (Oct. 27 — 30, 2007).
St. Joan, J. (2001). Building bridges, building walls: Collaborationbetween lawyers and social workers in a domestic violence clinicand issues of client confidentiality. 7 Clinical L. Rev. 403.
Zavez, M. (2005). The ethical and moral considerations presented bylawyer/social worker interdisciplinary collaborations. 5 Whittier J. Child Fam. Advoc, 191.
[ILLEGIBLE TEXT] *Page 12 
[ILLEGIBLE TEXT]
[1] La.R.S. 37:2718(B)(2).
[2] La.R.S. 37:2718(B)(3).
[3] La.R.S. 9:2800.2(A).
[4] La. Code of Evid. art. 510(A)(2); La. Code of Evid. art.510(A)(4)(C).
[5] La. Code of Evid. art. 510(B)(1); La. Code of Evid. art. 510(C)(1).
[6] La. Code of Evid. art. 510(B)(2)(k); La. Code of Evid. art.510(C)(2)(F).
[7] La. Ch. Code art. 603(15)(b) (West 2010). ("`Mental health/social service practitioner' is any individual who provides mental health care or social service diagnosis, assessment, counseling, or treatment, including a psychiatrist, psychologist, marriage or family counselor, social worker, member of the clergy, aide, or other individual who provides counseling services to a child or his family."); La. Ch. Code art. 609(1) (emphasis added).
[8] See La. Ch. Code art. 610.
[9] La. Ch. Code art. 609(2).
[10] Code of Ethics, National Association of Social Workers, § 1.01.
[11] Code of Ethics, National Association of Social Workers, § 1.07(c).
[12] Id.
[13] Code of Ethics, National Association of Social Workers, § 1.07(d).
[14] Code of Ethics, National Association of Social Workers, § 1.07(e).
[15] Id.
[16] Id.